UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

CLIFFORD DALE TINLEY,           :
                                :
        Petitioner              :
                                :
    v.                          :   CIVIL NO. 3:CV-07-787
                                :
SUPERINTENDENT, SCI-COAL        :   (Judge Kosik)
TOWNSHIP,                       :
                                :
        Respondent              :

**M E M O R A N D U M**

_____Before the court is the counseled habeas corpus petition of Clifford Dale Tinley

filed pursuant to 28 U.S.C. § 2254.  Tinley is currently an inmate confined at the State

Correctional Institution at Coal Township, Pennsylvania.  He is currently serving an

aggregate term of imprisonment of 13 years, 10 months to 27 years, 8 months. In the

petition, Tinley challenges his July 19, 2001 conviction in the York County Court of

Common Pleas on various sex offenses committed against his niece and his

stepdaughter.   He raises four (4) grounds of ineffective assistance of counsel. An

Order to Show Cause was issued by the court on May 1, 2007, directing Respondent

to answer the allegations in the petition within twenty (20) days.  (Doc. 2.)  In the

Order, Petitioner was also advised that he could file a reply to Respondent's answer

within fifteen (15) days from its filing.  A response to the petition with attached

exhibits, as well as relevant transcripts, were thereafter filed on May 16, 2007.  No

traverse has been submitted.  The petition is ripe for consideration and, for the

reasons that follow, will be denied.

## I.    Background

On August 2, 2000, two separate criminal complaints were filed against

Petitioner accusing him of sexually abusing both his niece, J.T. and his stepdaughter,

B.M.  According to the complaints, Petitioner began abusing J.T. in January of 1996

when she was 11 years old, and continued until July of 2000.  The abuse of B.M.

began in January of 1990 when she was 10 years old, and continued until December

of 1999, when she was 19 years old.  The allegations of sexual abuse contained in the

complaints included vaginal intercourse, digital penetration, oral intercourse, various

acts of masturbation, the insertion of objects into J.T.'s vagina, general sexual

touching of B.M's breasts, buttocks and vagina, and exposing B.M. to pornographic

movies.  (Doc. 8, Ex. 4, 4/15/05 Super. Ct. Op. at 2-3.)[1]

The Commonwealth filed a notice to consolidate the cases, and a jury trial on

all charges was conducted in July of 2001.  On July 19, 2001, Petitioner was found

guilty on the following charges with regard to J.T.: rape, involuntary deviate sexual

---

[1]  Respondent attaches numerous unnumbered exhibits to the response
submitted in this case.  For ease of reference, the court will number each exhibit in
order as they appear, and cite them as such within the text of this Memorandum.

intercourse ("IDSI"), attempted IDSI, statutory sexual assault, sexual assault, aggravated indecent sexual assault, indecent assault, and corruption of minors.  With respect to B.M., Petitioner was convicted of sexual assault, aggravated indecent assault, indecent assault, and corruption of minors.  He was acquitted on the rape and IDSI charges with respect to B.M.

On January 31, 2002, Petitioner was sentenced to an aggregate prison term of 13 years, 10 months to 27 years, 8 months.  This judgment of sentence was affirmed on direct appeal on September 22, 2003. (Doc. 8, Ex. 1, Commonwealth v. Tinley, 455 MDA 2002.)  A petition for relief filed pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. C. S. §§ 9541, et seq. was thereafter timely filed on January 2, 2004.  (Id., Ex. 2.)  Following a hearing, the PCRA petition was denied by the trial court on July 1, 2004.  (Id., PCRA Hr'g Tr., Ex. 2.)  The PCRA denial was affirmed by the Pennsylvania Superior Court on April 15, 2005.  (Id., Ex. 4, Commonwealth v. Tinley, 1247 MDA 2004.) The Pennsylvania Supreme Court denied allocatur on May 3, 2006.  (Id., Ex. 6.)   The instant petition for writ of habeas corpus was thereafter filed on April 30, 2007.

Petitioner raises four grounds of relief in the petition.  Each sets forth alleged instances of ineffective assistance of trial counsel.  In the first ground, he claims that trial counsel failed to object to alleged instances of hearsay testimony on numerous occasions.  He next maintains that counsel was ineffective for failing to object to the

testimony of the Commonwealth's expert, Debra Holbrook, R.N.  The third

ineffective assistance ground focuses on counsel's failure to object to the

consolidation of the two cases.  Finally, Petitioner contends that counsel was

ineffective in failing to advise him of a plea bargain offered at the time the jury went

out to deliberate.

## II.   Applicable Law

Section 2254 of Title 28, United States Code, provides that the district court

"shall entertain an application or a writ of habeas corpus on behalf of a person in

custody pursuant to the judgment of a State court only on the ground that he is in

custody in violation of the Constitution or laws or treaties of the United States."  See

28 U.S.C. § 2254(a).  Properly presented, exhausted claims for relief that have been

adjudicated on the merits by the state courts are subject to review under the standard

of whether they are "contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States,"

28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the state court

proceeding."  28 U.S.C. § 2254(d)(2).  A state court decision will be an

"unreasonable application of" Supreme Court precedent if it "correctly identifies the

governing legal rule but applies it unreasonably to the facts of a particular prisoner's

case."  Williams v. Taylor, 529 U.S. 362, 408-409 (2000).  However, "a federal

habeas court may not issue the writ simply because that court concludes in its

independent judgment that the relevant state-court decision applied clearly

established federal law erroneously or incorrectly.  Rather, that application must also

be unreasonable."  Id. at 411.

Under 28 U.S.C. § 2254(e)(1), a federal court is required to presume that a state

court's findings of fact are correct.  A habeas petitioner must rebut this presumption

by clear and convincing evidence.  See 28 U.S.C. § 2254 (e)(1); Miller-El v. Cockrell,

537 U.S. 322, 341 (2003).  This presumption of correctness applies to both explicit

and implicit findings of fact.  Campbell v. Vaughn, 209 F.3d 280, 286 (3d Cir. 2000).

## III.   Discussion

### A.     Procedurally Defaulted Claim

One of the four ineffectiveness of counsel claims raised by Petitioner, the

failure of counsel to advise of a plea offer, is procedurally defaulted without excuse.

Habeas corpus relief cannot be granted unless available state court remedies on the

federal constitutional claims have been exhausted, or there is an absence of available

state corrective process, or circumstances exist that render such process ineffective to

protect the rights of the applicant.  See 28 U.S.C. § 2254(b)(1).  This statutory

provision has been interpreted to require the federal habeas petitioner to present both

the facts and legal theory associated with each claim through "one complete round of

the State's established appellate review process."  O'Sullivan v. Boerckel, 526 U.S.

838, 844-845 (1999); <u>Holloway v. Horn</u>, 355 F.3d 707, 714 (3d Cir. 2004).  To satisfy

this requirement, a petitioner must demonstrate that the claim raised was fairly

presented to the state's highest court, either on direct appeal or in a state post-

conviction proceeding.  <u>Lambert v. Blackwell</u>, 134 F.3d 506, 513 (3d Cir. 1997). It is

not necessary for a petitioner seeking federal habeas relief to present his federal

claims to state courts both on direct appeal and in PCRA proceedings.  <u>Swanger v.</u>

<u>Zimmerman</u>, 750 F.2d 291, 295 (3d Cir. 1984).  In addition, the state court must be

put on notice that a federal claim is being asserted.  <u>Keller v. Larkins</u>, 251 F.3d 408,

413 (3d Cir. 2001).

The exhaustion requirement is not a mere formality.  It serves the interests of

comity between federal and state systems by allowing the state an initial opportunity

to determine and correct any violation of a prisoner's federal rights.  <u>Crews v. Horn</u>,

360 F.3d 146, 151 (3d Cir. 2004).

When a habeas petitioner fails to obtain consideration of a claim by a state

court, either due to the petitioner's failure to raise that claim before the state courts

while state-court remedies are still available, or due to a state procedural rule that

prevents the state courts from reaching the merits of the petitioner's claim, that claim

is procedurally defaulted for purposes of federal court habeas review.  <u>Bronshstein v.</u>

<u>Horn</u>, 404 F.3d 700, 707 (3d Cir. 2005)(quoting <u>Coleman v. Thompson</u>, 501 U.S.

722, 729 (1991))("the procedural default doctrine precludes a federal habeas court

from 'review[ing] a question of federal law decided by a state court if the decision of that court rests on a state law ground that is *independent* of the federal question and *adequate to* support the judgment.'")(emphasis in original). In situations where returning an unexhausted claim to the state courts would be futile because of a state procedural bar, the exhaustion requirement is excused. Slutzker v. Johnson, 393 F.3d 373, 379-380 (3d Cir. 2004). Nonetheless, while a prisoner's procedural default may excuse exhaustion, it does not automatically entitle him to federal court review of the merits of his claim.

A federal court can reach the merits of procedurally defaulted claims only if the petitioner demonstrates either "cause and prejudice" in connection with the procedural default, or that a fundamental miscarriage of justice would result if his claim was not reviewed. See Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Wenger v. Frank, 266 F.3d 218, 225 (3d Cir. 2001); Lines v. Larkins, 208 F.3d 153, 166 (3d Cir. 2000). To satisfy the first exception, petitioner must show: (1) cause for his failure to raise his claim in state court; and (2) prejudice to his case as a result of that failure. Coleman v. Thompson, 501 U.S. 722, 750 (1991). To demonstrate "cause" for a procedural default, the petitioner must show that something "external" to the defense impeded petitioner's efforts to comply with the state's procedural rule. Murray v. Carrier, 477 U.S. 478, 488 (1986). Once "cause" has been successfully demonstrated, petitioner must then prove "prejudice." Prejudice must be something

that "worked to [petitioner's] actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Id. at 494.

Alternatively, a federal court may excuse a procedural default when the petitioner establishes that failure to review the claim will result in a fundamental miscarriage of justice. See Werts v. Vaughn, 228 F.3d 178, 192-193 (3d Cir. 2000). A credible allegation of "actual innocence" constitutes a "miscarriage of justice" that enables federal courts to hear the merits of otherwise procedurally defaulted habeas claims. Hubbard v. Pinchak, 378 F.3d 333, 338 (3d Cir. 2004). The fundamental miscarriage of justice exception, as defined by the United States Supreme Court, is confined to cases of actual innocence as compared to legal innocence, where the petitioner can show that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt in light of new evidence. Schlup v. Delo, 513 U.S. 298, 327 (1995). "To be credible," a claim of actual innocence must be based on reliable evidence not presented at trial. Id. at 324.

In the instant case, there is no question the issue of trial counsel's ineffectiveness in failing to advise Petitioner of a 3-6 year plea offer was never raised in the state courts. Petitioner argues, however, that the information giving rise to this claim "surfaced suddenly during the course of the PCRA hearing in the state trial court. . . ." during trial counsel's testimony. (Doc. 1 at 53.) While trial counsel states in his testimony that he relayed this offer to Petitioner, Petitioner adamantly denies

ever being advised of such an offer.  Even if true, the claim is still procedurally defaulted for the following reasons.

It is clear that this claim could not have been presented and exhausted on direct appeal, as Petitioner did not become aware of it until the time of the PCRA hearing on July 1, 2004. As an alternative to the state appellate review process, a state's collateral review provisions must be considered as "available procedure[s]" to decide if the petitioner has exhausted his state remedies.  28 U.S.C. § 2254(c).  While a petitioner need not have invoked every conceivably available state remedy, a state prisoner needs to have invoked available state collateral review processes unless the same evidence and issues were already decided on direct appeal.  See O'Sullivan, 526 U.S. at 844-45.  In Pennsylvania, the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-46, is the collateral means to challenge a conviction or sentence.  Under the PCRA, a prisoner may file a petition, including a second or subsequent petition, challenging his conviction within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that one of three provided exceptions is applicable.  42 Pa.C.S. § 9545(b)(1).  One such exception is where the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence.  42 Pa.C.S. § 9545(b)(1)(ii).  Any petition invoking one of the exceptions must be filed within 60 days of the date the claim could have been presented.  42 Pa.C.S. § 9545(b)(2).

Applying these standards to the instant case, it is clear that Petitioner's unexhausted claim is procedurally defaulted.  While he may not have discovered the basis for the ineffective assistance claim regarding the plea offer until the time of the hearing on his PCRA petition, he fell within the statutory exception for newly ascertained facts set forth in § 9545(b)(1)(ii), and had 60 days from that point within which to raise this new claim in a second or subsequent PCRA petition, and then exhaust said claim through the state court system.  He had state corrective process available and did not utilize it.  As such, the claim is now procedurally barred and Petitioner cannot raise it for the first time in the instant habeas petition.  Further, no basis exists for excusing the procedural default.  Petitioner readily admits that he became aware of the claim at the July 1, 2004 PCRA hearing.  There are no assertions that any "cause" exists for his failure to raise his claim in state court.  Further, no credible allegation of actual innocence constituting a miscarriage of justice has been asserted which would enable the court to hear the merits of this otherwise procedurally defaulted claim.

### B.    Ineffective Assistance of Counsel Claims

The Sixth Amendment guarantees criminal defendants the right to the effective assistance of counsel.  Strickland v. Washington, 466 U.S. 668, 685-86 (1984).  A defendant alleging ineffective assistance must satisfy the familiar two-part test set forth in Strickland:

> First, the defendant must show that counsel's performance
> was deficient.  This requires showing that counsel made
> errors so serious that counsel was not functioning as the
> "counsel" guaranteed the defendant by the Sixth
> Amendment.  Second, the defendant must show that the
> deficient performance prejudiced the defense.  This requires
> showing that counsel's errors were so serious as to deprive
> the defendant of a fair trial, a trial whose result is reliable.

Id. at 687.  To show deficient performance, "the defendant must show that counsel's

representation fell below an objective standard of reasonableness ... under prevailing

professional norms." Id. at 687-88.  "Judicial scrutiny of counsel's performance must

be highly deferential ... [and] a court must indulge a strong presumption that

counsel's conduct falls within the wide range of reasonable professional assistance."

Id. at 689.  To demonstrate prejudice, the defendant must show that counsel's

deficient performance "actually had an adverse effect on the defense."  Id. at 693.  "It

is not enough for the defendant to show that the errors had some conceivable effect

on the outcome of the proceeding." Id.  Rather, "[t]he defendant must show that there

is a reasonable probability that, but for counsel's unprofessional errors, the result of

the proceeding would have been different.  A reasonable probability is a probability

sufficient to undermine confidence in the outcome."  Id. at 694.

Where state courts have considered a claim for ineffective assistance of

counsel, the federal court's review of the claim is governed by 28 U.S.C.

§ 2254(d)(1).  Thus, a federal court does not render an independent judgment, but

rather determines whether the state court decision is contrary to or involved an

unreasonable application of the <u>Strickland</u> test.  <u>See</u> 28 U.S.C. § 2254(d)(1);

<u>Rompilla v. Horn</u>, 545 U.S. 374, 380 (2005).

The Third Circuit Court of Appeals has held that the ineffective assistance

standard applied by the Pennsylvania courts is materially similar to that articulated in

<u>Strickland</u>.  <u>See</u> <u>Werts v. Vaughn</u>, 228 F.3d 178, 204 (3d Cir. 2000).  Given that the

Superior Court applied the correct standard, its opinion is not "contrary to" federal

law.  <u>Henderson v. DiGuglielmo</u>, 138 Fed. Appx. 463, 469 (3d Cir. 2005).  The issue

then is whether the Superior Court rulings on Petitioner's remaining ineffective

assistance claims constitute unreasonable applications of governing federal law.

"A court can choose to address the prejudice prong before the ineffectiveness

prong and reject an ineffectiveness claim solely on the ground that the defendant was

not prejudiced."  <u>Rolan v. Vaughn</u>, 445 F.3d 671, 678 (3d Cir. 2006).  "The object of

an ineffective assistance claim is not to grade counsel's performance.  If it is easier to

dispose of an ineffective assistance claim on the ground of lack of sufficient

prejudice, which we expect will often be so, that course should be followed."  <u>Id</u>.

### 1. Counsel's failure to object to alleged hearsay statements

Petitioner contends that trial counsel was ineffective in failing to object to

various instances of hearsay testimony during the course of his trial.  Specifically, the

alleged hearsay statements involve testimony from victim B.M., and the following

Commonwealth witnesses: Rebecca Reed, J.T's cousin; Tina Reed, J.T.'s aunt and

Roxanne Hubbard, J.T.'s mother.  All of the challenged hearsay testimony related to the disclosure of the abuse by the two victims to various family members.  _____

Petitioner's ineffective assistance claim was analyzed under Pennsylvania Rule of Evidence 801c that defines hearsay as "a statement, other than one made by the defendant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." This is identical to the federal definition contained in the Federal Rules of Evidence at Fed. R. Evid. 801.

This issue was addressed by the PCRA court as well as by the Pennsylvania Superior Court.  Following the evidentiary hearing, the PCRA court concluded that no inadmissible hearsay occurred during the trial and denied relief on this ground.  In reaching this decision, the PCRA court emphasized the focus of the defense - - that the victims were in some sort of connivance or conspiracy and that they had the opportunity to plan the allegations.  (Doc. 8, Ex. 3 at 134.)  The court noted how trial counsel "rigorously cross-examined" each of the girls to discredit them and demonstrate inconsistencies in their reporting of the incident in support of the defense theory.  Various family members of the victims testified with regard to the time frame within which the victims had come forward to report the abuse. While noting that there were instances where the witnesses did testify as to the reports made by the girls, the PCRA court emphasized how the nature of the witnesses' testimony was restricted so as to "not repeat the precise allegations of sexual acts and assaults

13

committed upon them, but rather referencing solely the time frame within which the allegations of sexual assault had occurred." (Id. at 135.) The PCRA court concluded that the witnesses' statements were prior consistent statements rendered admissible by trial counsel's "vigorous cross examination" with regard to the various delays in the reports of assault made by the girls and the inconsistencies therein.  As such, no inadmissible hearsay was found to have occurred.

In addressing Petitioner's appeal from the denial of this ground by the PCRA court, the Pennsylvania Superior Court set forth that while hearsay statements are generally inadmissible, exceptions to the hearsay rule exist, including out of court statements offered for some reason other than to prove the truth of the matter asserted, such as to explain a course of conduct. See Commonwealth v. Dent, 837 A.2d 571, 577 (Pa. Super. 2003), appeal denied, 863 A.2d 1143 (Pa. 2004).  The Superior Court found that the first alleged instance of improper testimony did not constitute hearsay as it was not offered for the truth of the matter asserted.  (Doc. 8, Ex. 4 at 7.)  This was the testimony by B.M. that her mother told her not to discuss the abuse with J.T. Rather, the court found the testimony to explain why B.M. did not discuss the abuse with J.T. or attempt to protect her. Further, even if it had been hearsay, its admission was harmless error, as it would not have affected the jury verdict

The remaining challenged testimony, that offered by Rebecca Reed, Tina Reed and Roxanne Hubbard which concerned J.T.'s disclosure of the abuse to them, was

14

found by the Superior Court to demonstrate the sequence of events in the case and not

offered to prove the validity of the abuse. (<u>Id</u>. at 8.) The court based this holding on

the fact that both victims had claimed to have been abused for years prior to notifying

the police, and therefore the testimony regarding how and when J.T. eventually

disclosed the abuse to her family was important to show why the police finally

became involved in July of 2000.  In addition, the Superior Court pointed out that any

error would be harmless anyway because the out of court statements were all

confirmed by the declarants.  The Superior Court also emphasized the theory of the

defense in this case and how the timing of the disclosure of the allegations of the

victims was crucial to support the defense's case.

Trial counsel testified at the PCRA hearing regarding the alleged hearsay

testimony explaining that some of the statements he did not feel to be hearsay and

others he did object to and was overruled.  He further pointed out his desire to avoid

"alienating the jury" by making too many objections and his trial strategy in

defending the case by focusing on discrediting the victims and his belief that the

victims conspired.  (Doc. 8, Ex. 3, PCRA Hr'g Tr.)

<u>Strickland</u> and its progeny make clear that counsel's strategic choices will not

be second guessed by post-hoc determinations that a different trial strategy may have

yielded a better result.  <u>Strickland</u>, 466 U.S. at 689; <u>see</u> <u>also</u> <u>Darden v. Wainwright</u>,

477 U.S. 168 (1986). The state court's conclusion rejecting Petitioner's ineffective

assistance claim as to this ground is not contrary to, and did not involve an unreasonable application of federal law.  The state court found the explanations offered by trial counsel at the PCRA hearing to be supported by the record, particularly counsel's trial strategy for the defense.  Further, the state court's basis for finding the statements not to consist of hearsay testimony cannot be said to be unreasonable.  Accordingly, it cannot be said that the state court's rejection of Petitioner's claim of ineffective assistance of counsel is an unreasonable application of Supreme Court precedent.  Habeas corpus relief is not warranted on this claim.

**2.  Counsel's failure to object to Nurse Holbrook's testimony**

Petitioner contends that his trial counsel was ineffective when he failed to object to the testimony of Debra Holbrook, R.N., as the Commonwealth's expert medical witness because (1) the Pennsylvania Professional Nursing Law, 63 Pa.C.S.A. § 211 et seq. prohibited her from rendering a medical diagnosis; and (2) she lacked the credentials to give any scientific opinions.  Holbrook testified that she examined J.T. on July 26, 2000, as a follow-up to allegations that she had been sexually assaulted and, upon examination, detected a "healing tear to [J.T.'s] posterior fourchette [of her vagina] at midline."  (Doc. 7, Tr. at 430.)  She concluded "to a reasonable degree of scientific certainty" that the injury was "consistent" with the history provided by J.T., namely that her vagina had been penetrated with a metal rod, candle and penis.  (Id. at 436.)

This issue was raised on direct appeal, but the Pennsylvania Superior Court dismissed without prejudice all of the ineffectiveness of counsel claims raised by Petitioner, finding them best addressed on collateral review under the PCRA. (Doc. 8, Resp., Ex. 1 at 5.) The issue was thereafter raised in Petitioner's PCRA petition. Upon review of the evidence presented, the state courts found that Holbrook's testimony did not constitute a medical diagnosis (as opposed to a nursing diagnosis) in that Holbrook simply offered opinion testimony that J.T.'s visible healing tear was consistent with the history provided by J.T. and that the testimony did not involve any identification of a disease based on signs and symptoms.  While Petitioner is adamant that Holbrook's testimony was the result of diagnostic examination, the state courts' conclusion that Holbrook's testimony was based upon observation by the naked eye is clearly supported by the record.  Accordingly, it cannot be said that the state courts' rejection of Petitioner's claim that Holbrook's testimony was in violation of the state statute is contrary to or an unreasonable application of Supreme Court precedent.

Further, the state court decisions finding that Holbrook possessed the necessary credentials to give scientific opinion testimony did not involve an unreasonable application of the Strickland test.  A witness can be qualified to render an expert opinion based on scientific, technical or other specialized knowledge beyond that possessed by a layperson that will assist the trier of fact to understand the evidence or to determine a fact in issue.  See Pa. Rule of Evidence 702.  In finding Holbrook to be

17

"imminently qualified" to examine J.T., the state courts cited to Holbrook's: (1)

background as a registered nurse; (2) the facts that she was the coordinator and

founder of the Memorial Hospital in Delaware's Sexual Assault Nurse Examiner

Program; (3) her experience as a sexual assault nurse examiner; and (4) her training

as provided by physicians and the FBI in areas including forensics, DNA collection,

patterns of injuries and special needs of sexual assault victims.  (Doc. 8, Ex. 4 at 9,

12.)  Based on the foregoing, it cannot be said that the state courts' acceptance of

Holbrook as a nurse with specialized training in forensic examination of sexual

assault victims and their finding that trial counsel was not ineffective for failing to

object to Holbrook's qualifications was an unreasonable application of <u>Strickland</u>.

Accordingly, Petitioner's ineffective assistance claims challenging the testimony of

Nurse Holbrook are denied.

### 3.  Counsel's failure to oppose consolidation/move for severance of two cases

Petitioner also maintains that trial counsel was ineffective in failing to object to

the Commonwealth's motion to consolidate/move to sever the two sexual assault

cases.  Pursuant to Pa. R. Crim. P. 582(A)(1)(a), criminal offenses charged in separate

informations may be tried together if, inter alia, "the evidence of each of the offenses

would be admissible in a separate trial for the other and is capable of separation by

the jury so that there is no danger of confusion[.]"  Similarly, a court may entertain a

motion for separate trials if "it appears that any party may be prejudiced by offenses

or defendants being tried together. Pa. R. Crim. P. 583.  On appeal from the denial of

PCRA relief on this issue, the Pennsylvania Superior Court cites these rules and

agrees with Petitioner that if the sexual assault cases had been tried separately,

evidence of the abuse against one victim would not have been admissible in the trial

concerning the other victim.  As such, the instant ineffective assistance claim was

found to have arguable merit.  However, to prove counsel's ineffectiveness, it must

also be shown that counsel's actions/inactions had no reasonable basis designed to

further his client's interest.  The Superior Court found that a reasonable basis was

demonstrated based on the following reasons.

Trial counsel testified at the PCRA evidentiary hearing that Petitioner's

defense was that the victims conspired to fabricate the allegations.  Counsel stated

that Petitioner informed him that J.T's mother "would try to extort some money from

the family at some place, [and] would then move on." (Doc. 8, Ex. 3, PCRA Hearing

Tr. at 80.)  Counsel also believed that Cindy Tinley, Petitioner's wife and mother of

B.M., could discredit some of B.M.'s allegations and that counsel "hoped that would

spill on to [J.T.] and show there was, in fact, a conspiracy."  (Id. at 96.)

The Superior Court found defense counsel's strategy resting solely on

credibility to be reasonable in light of the fact that there was no strong physical

evidence to either support or discredit the allegations of long term sexual abuse.  His

strategy of attacking both cases as contrived fabrications was found to be reasonable,

considering the timing of the victims' revelations of the abuse.

Given that the Superior Court applied the correct standard in analyzing this ineffective assistance claim, its decision is not "contrary to" federal law.  Henderson v. DiGuglielmo, 138 Fed.Appx. 463, 469 (3d Cir. 2005).  Further, the Superior Court ruling did not constitute an unreasonable application of the governing federal law. As previously stated, counsel's strategic choices will not be second guessed.  See Strickland, 466 U.S. at 689. Based on the record, it cannot be said that the state court's rejection of Petitioner's ineffectiveness claim was an unreasonable application of Supreme Court precedent.  Despite any arguable merit to the claim, the record reveals ample support for the Superior Court's finding of a reasonable basis not to object to the consolidation.  The defense trial strategy of a conspiracy between the victims in light of the timing of the reports of abuse coupled with various avenues to attack the credibility of the allegations and the hope that it would spill onto the other victim to demonstrate conspiracy cannot be found to be unreasonable.  Accordingly, this claim fails.   An appropriate Order is attached.

UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA


| | | |
|---|---|---|
| CLIFFORD DALE TINLEY, | : | |
| | : | |
| Petitioner | : | |
| | : | |
| v. | : | CIVIL NO. 3:CV-07-787 |
| | : | |
| SUPERINTENDENT, SCI-COAL TOWNSHIP, | : | (Judge Kosik) |
| | : | |
| | : | |
| Respondent | | |

## O R D E R

**NOW, THIS 29th DAY OF MAY, 2008,** for the reasons set forth in the accompanying Memorandum, **IT IS HEREBY ORDERED AS FOLLOWS:**

1.  The petition for writ of habeas corpus is **DENIED**.

2.  Based on the court's conclusions herein, there is no basis for the issuance of a certificate of appealability.

3.  The Clerk of Court shall mark this case **CLOSED**.


*s/EDWIN M. KOSIK*
United States District Judge